**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AUTO CLUB INSURANCE
ASSOCIATION,

      Plaintiff,                             Case No. 10-10879

v.                                    Hon. Gerald E. Rosen

GREAT AMERICAN INSURANCE
GROUP,

      Defendant.
_____/

**OPINION AND ORDER REGARDING**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       July 7, 2011

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Auto Club Insurance Association commenced this action in state court on

January 15, 2010, seeking reimbursement from Defendant Great American Insurance

Group[1] for personal injury protection benefits Plaintiff paid to or on behalf of non-party

Eric Joye arising from injuries he suffered when he was riding a dirt bike on a public road

and was struck by a Freightliner semi truck. Defendant removed the case to this Court on

---

[1]Defendant states that its correct name is Great American Insurance Company, and that it
has been erroneously designated as "Great American Insurance Group" in Plaintiff's complaint.

March 4, 2010, citing the parties' diverse citizenship. *See* 28 U.S.C. §§ 1441(a), 1332(a).

By cross-motions filed in September of 2010, each party seeks an award of summary judgment in its favor on Plaintiff's claim for reimbursement of insurance benefits. The parties agree that the resolution of these cross-motions is governed by a Michigan statute that precludes the payment of personal protection insurance benefits for accidental bodily injury if, at the time of the accident, the person seeking benefits "was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle." Mich. Comp. Laws § 500.3113(a). In Defendant's view, this statutory exclusion from coverage is applicable here by virtue of Mr. Joye's operation of a stolen motorcycle without the owner's permission and without a valid driver's license. Plaintiff argues, in contrast, that the exclusion does not apply because Mr. Joye did not steal the motorcycle, but instead believed that he was given permission to test drive the motorcycle by someone he understood to be its owner.

These cross-motions have been fully briefed by the parties. Having reviewed the parties' motions, briefs, and accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II.  <u>FACTUAL BACKGROUND</u>

On July 24, 2008, Eric Joye was riding a Honda XR650R "dirt bike" style motorcycle in the vicinity of Eaton Avenue and Cheyenne Street in Detroit, Michigan, when he was struck by a Freightliner semi truck insured by Defendant Great American Insurance Group.  Mr. Joye sustained injuries to his arm, foot, knee, back, and shoulder, and received treatment at a nearby hospital.

According to Mr. Joye, an acquaintance he identified as Matthew Buehrle had offered to sell the Honda motorcycle,[2] and he was test riding it at the time of the accident to determine whether he would be interested in buying it.  Unbeknownst to Mr. Joye, however, the motorcycle had been reported stolen about two weeks before the accident. The owner of the motorcycle, Steven Warns, testified that it was stolen from a parking lot outside a Detroit bar, that he immediately reported it as stolen, that he did not know Mr. Joye or Mr. Buehrle, and that, prior to the motorcycle being stolen, he had not given permission to anyone to use the motorcycle.

At the time of the accident, Mr. Joye was operating the motorcycle on a public road, intending to ride it to a vacant lot that was more suitable for testing a dirt bike.  He had no valid driver's license at the time, with his license having been suspended since

---

[2]As Defendant points out, Mr. Joye has not been altogether clear and consistent in identifying the individual who offered to sell him the motorcycle.  At a prior deposition taken in a case brought by Mr. Joye against Plaintiff, he recalled that this individual might have been named Chris, (*see* Plaintiff's Motion, Ex. D, Joye 11/9/2009 Dep. at 17), and an insurance investigator who spoke to Mr. Joye shortly after the accident likewise reported that Joye identified the seller of the motorcycle as "a guy name[d] Chris," (Defendant's Response, Ex. 7).

3

2003.  In addition, Mr. Joye's (suspended) license did not have the necessary indorsement for operating a motorcycle on a public street in Michigan, *see* Mich. Comp. Laws § 257.312a(1), and he testified that the motorcycle had no license plate.

Because Mr. Joye had no available insurance to cover the injuries he sustained in the accident, he applied for benefits through the Michigan Assigned Claims Facility ("MACF"), a plan established under Michigan's no-fault insurance law for paying personal protection insurance benefits to individuals who suffer bodily injury in a motor vehicle accident but have no insurance coverage.  *See* Mich. Comp. Laws § 500.3171 *et seq.*  Joye's claim was assigned to Plaintiff Auto Club Insurance Association for handling, and Plaintiff has paid or will pay over $150,000 in benefits to or on behalf of Mr. Joye arising from his claim.  Through the present suit, Plaintiff seeks reimbursement of these payments from Defendant, alleging that Michigan law designates Defendant as the highest priority insurer from whom Mr. Joye may recover personal protection insurance benefits for his injuries.  *See* Mich. Comp. Laws § 500.3114(5) (establishing the priority of insurers where an individual suffers accidental bodily injury "while an operator or passenger of a motorcycle").

### III.  ANALYSIS

### A.    The Standards Governing the Parties' Cross-Motions

Through the present motions, each party seeks summary judgment in its favor on Plaintiff's claim for reimbursement of the insurance benefits it has paid to or on behalf of Mr. Joye.  Under the pertinent Federal Rule, summary judgment is proper "if the

4

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[3]  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In this case, the parties are largely in agreement as to the operative facts, and the disposition of their cross-motions turns exclusively on a question of law — namely, whether these agreed-upon facts trigger an exclusion from insurance coverage under Mich. Comp. Laws § 500.3113(a).  Because this appeal to a statutory exclusion is an affirmative defense as to which Defendant bears the burden of proof, Defendant may secure an award of summary judgment in its favor only upon a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).  More generally, in determining each party's entitlement to summary judgment under Rule 56, the Court must view the evidence in a light most

---

[3]The quoted language is from the version of Rule 56 in effect at the time the parties filed their cross-motions.  The Rule has since been significantly revised and reordered, but the underlying standard for awarding summary judgment remains the same under the amended Rule. *See* Fed. R. Civ. P. 56(a) (effective December 1, 2010).

favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir.

2006).

**B.    Defendant Has Established as a Matter of Law That Mr. Joye Is Not Entitled to No-Fault Insurance Benefits.**

In contesting Plaintiff's claim for reimbursement of the insurance benefits it has

paid to or on behalf of Eric Joye for the injuries he sustained in his July 24, 2008

motorcycle accident, Defendant relies on an exclusion set forth in Michigan's no-fault

motor vehicle insurance statute.  The pertinent statutory provision states:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident . . .
>
> (a)  The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

Mich. Comp. Laws § 500.3113.  As the Michigan courts have observed, the "first level of

inquiry" under § 3113(a) is "whether the taking of the vehicle was unlawful."  *Amerisure*

*Insurance Co. v. Plumb,* 282 Mich. App. 417, 766 N.W.2d 878, 883 (2009); *see also*

*Mester v. State Farm Mutual Insurance Co.,* 235 Mich. App. 84, 596 N.W.2d 205, 206

(1999).  If the claimant's taking of the motor vehicle is found to be unlawful, benefits

may nonetheless be paid if the claimant "reasonably believed that he or she was entitled

to take and use the vehicle."  Mich. Comp. Laws 500.3113(a); *see also Plumb,* 766

N.W.2d at 884; *Mester,* 596 N.W.2d at 207.

The threshold question here, then, is whether Mr. Joye had "taken unlawfully" the

6

2:10-cv-10879-GER-PJK    Doc # 44    Filed 07/07/11    Pg 7 of 17    Pg ID 433

motorcycle he was riding when he sustained his injuries. In asserting that he had not, Plaintiff argues that the statute's "taken unlawfully" language extends only to persons "who participated in the theft of the vehicle," (Plaintiff's Motion, Br. in Support at 9), and it points to the absence of evidence that Mr. Joye was involved in the theft of the motorcycle from its owner, Steven Warns, or that Mr. Joye even knew the vehicle was stolen. Defendant, in contrast, reads the pertinent Michigan case law as dictating a finding of an "unlawful taking" unless the claimant can show that he was using the vehicle with the owner's express or implied permission. Because the motorcycle's owner, Mr. Warns, did not give permission to anyone to use his motorcycle, Defendant surmises that Mr. Joye "unlawfully took" this vehicle within the meaning of § 3113(a). As discussed below, the Court finds that Defendant has the better of the argument on this issue.

The leading Michigan court decision on the "taken unlawfully" element of § 3113(a) is *Bronson Methodist Hospital v. Forshee,* 198 Mich. App. 617, 499 N.W.2d 423 (1993). In that case, insurer Auto Club Insurance Association intervened in order to seek reimbursement of no-fault benefits it had paid on behalf of Mark Forshee through the MACF. On the evening when Forshee sustained his injuries, he was traveling with a group of friends in an automobile owned by the father of one of these friends, Thomas Pefley. Pefley was arrested during the course of the evening, and as he was being taken away in a police cruiser, he yelled to a friend, William Morrow, to "take the car home." *Forshee,* 499 N.W.2d at 425. Morrow and Forshee did not proceed directly home,

however, but instead purchased a case of beer and continued their evening activities.  At about 2:00 a.m., they led the police on a high speed chase and their car struck an embankment, with both Forshee and Morrow sustaining critical injuries.  Although there was a dispute as to whether Forshee or Morrow was driving at the time of the crash, the trial court found that Forshee was the driver of the vehicle, and this finding was not challenged on appeal.  499 N.W.2d at 425.  The question before the court, then, was whether Forshee should be deemed under § 3113(a) to have unlawfully taken the vehicle belonging to the father of his friend, Thomas Pefley, once Pefley was taken away by the police earlier in the evening.

At the outset of its analysis, the Michigan Court of Appeals observed that "[t]here has not been a great deal of case law development of what constitutes an unlawful taking" under § 3113(a).  499 N.W.2d at 426.  Thus, the court looked to cases decided under Michigan's owner liability statute, Mich. Comp. Laws § 257.401 *et seq.,* which had addressed the related question "whether a vehicle was taken with [the owner's] consent." 499 N.W.2d at 426.  In considering these "consent" decisions, the court recognized that the owner liability statute and § 3113(a) serve different purposes and employ different language, and that, for example, the latter statute clearly would preclude an award of no-fault benefits to "a person who steals and automobile and becomes involved in a motor vehicle accident."  499 N.W.2d at 426.  Nonetheless, the court reasoned that "the broad definition of 'consent' employed by the [Michigan] Supreme Court in the owner liability context is of equal applicability here."  499 N.W.2d at 426.  More specifically, the court

8

found that "when an owner loans his vehicle to another, it is foreseeable that the borrower may thereafter lend the vehicle to a third party and such further borrowing of the vehicle by the third party is, by implication, with the consent of the owner."  499 N.W.2d at 427.

Applying this reasoning to the facts before it, the court held that Forshee was not operating a vehicle that he had "taken unlawfully" at the time he suffered his injuries:

> Thus, returning to the case at bar, under the reasoning of [a leading Supreme Court decision under the owner liability statute], Mark Forshee's use of the vehicle at the time of the accident was with the owner's consent inasmuch as the owner, Stanley Pefley, entrusted the vehicle to his son, Thomas, who in turn entrusted the vehicle to Morrow, who finally entrusted it to Forshee.  Given this unbroken chain of permissive use, we cannot say that Forshee's taking of the automobile was unlawful . . . .  [T]he mere fact that the borrower violates the restrictions placed on him by the owner does not negate the fact that the subsequent taking by a third party is, by implication, with the owner's consent.  Therefore, even though Stanley Pefley had placed restrictions on the use of the vehicle he entrusted to his son, including the specific restriction that Mark Forshee was not to use the vehicle, the fact that the vehicle was ultimately entrusted to Forshee in violation of those restrictions does not change the fact that the taking and use was with the owner's consent . . . .

499 N.W.2d at 427.

In *Plumb, supra,* 766 N.W.2d at 883-84, in contrast, the Michigan Court of Appeals found that the claimant in that case, Rae Louise Plumb, had unlawfully taken a Jeep Cherokee she was driving when she sustained her injuries.  On the night of her accident, Plumb was at a bar when the Jeep's owner, David Shelton,[4] arrived at the same

---

[4]To be accurate, Shelton was not the titled owner of the Jeep, but instead had entered into an agreement to purchase the vehicle and had been using it for over a month.  Under these circumstances, the court found that Shelton was "considered an 'owner' of the vehicle for purposes of the no-fault act."  *Plumb,* 766 N.W.2d at 884.

bar, parked his vehicle in the parking lot, and left his keys in the vehicle. Plumb and

Shelton did not know each other, and they did not speak while at the bar that night.

Plumb left the bar with two men she could not identify by name, and one of them handed

her the keys to the Jeep and asked her to drive because he was on probation. Plumb

agreed, despite having a suspended driver's license, lacking automobile insurance, and

being intoxicated. Shelton left the bar a short time later and discovered that his Jeep was

missing. In the early hours of the following morning, Plumb was found lying in a field

near the bar and the Jeep was discovered in a nearby drainage ditch, and a police

investigation determined that Plumb had driven the vehicle away from the bar and across

the field, where she struck an electrical transformer and crashed into the ditch.

Under these facts, the Michigan Court of Appeals held that Plumb had unlawfully

taken the Jeep:

> Shelton never gave the keys or permission to drive the Jeep to anyone that
> night. Although Plumb asserted that she received the keys from the
> unidentified man, there is no evidence that she received them from Shelton
> or the titled owner or otherwise had permission to take the Jeep and,
> accordingly, there is no material question of fact that Plumb lacked
> Shelton's consent or implied consent to take the Jeep . . . . Therefore, there
> is no genuine issue of material fact that Plumb unlawfully took the Jeep,
> and § 3113(a) applies.

*Plumb,* 766 N.W.2d at 884; *see also Farmers Insurance Exchange v. Young,* No. 275584,

2010 WL 3021860, at *4 (Mich. Ct. App. Aug. 3, 2010) (finding that a vehicle had been

taken unlawfully under § 3113(a) where "consent could not be implied through a chain of

entrustment from" the vehicle owner to the injured claimant who was operating the

10

vehicle).  While the court noted that there was no "evidence to suggest that Plumb had an intent to permanently deprive Shelton of the Jeep," it found that this lack of intent was relevant only to a "joyriding exception" that the Michigan courts had read into the "taken unlawfully" language of § 3113(a),[5] and it explained that this exception was limited solely to family members of the vehicle owner.  *Plumb,* 766 N.W.2d at 884.

As Defendant observes, the facts here are analogous to those presented in *Plumb,* and are readily distinguishable from the facts in *Forshee.*  In this case, as in *Plumb* (but unlike in *Forshee),* the owner of the vehicle had not given his permission or consent for anyone to use his vehicle.  In contrast to *Forshee,* 499 N.W.2d at 427, then, it cannot be said that there is an "unbroken chain of permissive use" between the vehicle owner and Mr. Joye (or the claimant in *Plumb*).  Rather, Mr. Joye (like the claimant in *Plumb)* "lacked [the owner's] consent or implied consent to take" the motorcycle he was riding when he suffered his injuries.  *Plumb,* 766 N.W.2d at 884.  Moreover, while there is no evidence that Mr. Joye was involved in the theft of Mr. Warns's motorcycle or "had an intent to permanently deprive [Mr. Warns] of" his vehicle, *Plumb,* 766 N.W.2d at 884, the same was true in *Plumb* — there, as here, the claimant was given permission to use the vehicle by someone who, so far as the claimant knew, had the authority to grant this permission, but the court in *Plumb* nonetheless concluded that the claimant had

_____

[5]Specifically, the Michigan Court of Appeals had previously held that the coverage exclusion set forth in § 3113(a) "does not apply to cases where the person taking the vehicle unlawfully is a family member doing so without the intent to steal but, instead, doing so for joyriding purposes."  *Butterworth Hospital v. Farm Bureau Insurance Co.,* 225 Mich. App. 244, 570 N.W.2d 304, 306 (1997) (footnote omitted).

unlawfully taken the vehicle within the meaning of § 3113(a).  This Michigan case law, then, seemingly compels the conclusion that Mr. Joye unlawfully took the motorcycle he was riding at the time he sustained his injuries.

In an effort to avoid this result, Plaintiff construes the pertinent Michigan case law as dictating that the "unlawful taking" of a vehicle must entail some degree of participation in the theft of the vehicle.  Yet, if the absence of evidence of vehicle theft (or the claimant's involvement in the theft) were sufficient to overcome the § 3113(a) exclusion, *Forshee* would have been far more easily decided, without the need for the court to consider whether the claimant in that case had the express or implied permission of the vehicle owner.  There was no evidence in *Forshee* that the vehicle had been stolen, and yet the court still deemed it necessary to determine whether there was an "unbroken chain of permissive use" between the vehicle owner and the injured claimant.  *Forshee,* 499 N.W.2d at 427.  Likewise, the court in *Plumb* focused on the claimant's "lack of consent or implied consent to take the Jeep," *Plumb,* 766 N.W.2d at 884, and this was cited as the determining factor in the court's holding that the claimant had unlawfully taken the vehicle, even though the claimant lacked any intent to permanently deprive the Jeep's owner of his vehicle.  *See also Mester,* 596 N.W.2d at 207 ("An unlawful taking does not require an intent to permanently deprive the owner of the vehicle . . . .").

The lone case cited by Plaintiff as turning upon the claimant's lack of participation in a vehicle theft, *Henry Ford Health System v. Esurance Insurance Co.,* 288 Mich. App. 593, __ N.W.2d __, 2010 WL 2292084 (June 8, 2010), is readily distinguishable.  In that

12

case, claimant Travion Hamilton was injured while riding as a passenger in a Jeep Cherokee driven by his girlfriend, Chandra Profic, who had "borrowed the Jeep from an acquaintance for a small fee knowing that it was a stolen vehicle." *Esurance,* 2010 WL 2292084, at *1.  While there was evidence that Hamilton was (or at least should have been) aware that the vehicle had been stolen, there was "no claim that Hamilton participated directly in taking the vehicle from the owner."  2010 WL 2292084, at *1. Under these facts, the Michigan Court of Appeals held that the § 3113(a) coverage exclusion did not apply, reasoning that "we cannot find that [Hamilton] 'had taken' the vehicle, let alone that he took it unlawfully."  2010 WL 2292084, at *4.  Observing that § 3113(a) refers separately to "tak[ing]" and "us[ing]" a vehicle, terms with "different meanings," the court found that "Hamilton used the Jeep, but he did not take the Jeep," explaining that he "never engaged or participated in an act through which he took possession or gained control of the Jeep."  2010 WL 2292084, at *4.

The facts here are different.  Mr. Joye "took possession" and "gained control" of Mr. Warns's motorcycle when he took the vehicle for a test drive to decide whether he wished to purchase it.  This fits comfortably within the ordinary definition of "take," as cited by the courts in both *Plumb,* 766 N.W.2d at 885, and *Esurance,* 2010 WL 2292084, at *5 — namely, "to get into one's hands or possession by voluntary action."  Although the claimant in *Esurance* was determined not to have "taken" the vehicle in which he was traveling as a passenger, Mr. Joye plainly "took" the motorcycle by gaining sole and exclusive possession of it during his test ride.  Accordingly, under *Esurance* and the other

13

above-cited case law, the Court finds that the motorcycle that Mr. Joye was operating at the time of his injuries was "taken unlawfully" within the meaning of § 3113(a).

Nonetheless, Plaintiff may still overcome this statutory exclusion from coverage by appealing to what the parties have termed the "safe harbor" provision of § 3113(a). In particular, even if (as here) an individual is found to have unlawfully taken a vehicle, the coverage exclusion does not apply if the individual "reasonably believed that he or she was entitled to take and use the vehicle." Mich. Comp. Laws § 3113(a). In light of the statutory reference to "take *and* use," the Michigan Court of Appeals has emphasized that "in circumstances where the vehicle was unlawfully taken, the injured party may obtain [personal protection insurance] benefits only if it can be shown (1) that the injured party reasonably believed that he or she was entitled to take the vehicle *and* (2) that the injured party reasonably believed that he or she was entitled to use the vehicle." *Plumb,* 766 N.W.2d at 885.

Because it is clear under the pertinent case law that Mr. Joye lacked a reasonable belief that he was entitled to *use* the motorcycle he was operating at the time of his injuries, there is no need for the Court to consider whether he reasonably believed that he was entitled to *take* the vehicle. Again, the decision in *Plumb* provides direct guidance on the question of Mr. Joye's entitlement to use the motorcycle. The injured party in that case, Rae Louise Plumb, "admitted that when she got into the Jeep, she knew that she could not legally drive because her driver's license had been suspended," and the record further revealed that Plumb's blood alcohol content at the time was "well above the legal

14

limit." *Plumb,* 766 N.W.2d at 886.  Upon reviewing the language of § 3113(a)'s safe

harbor provision, the Michigan Court of Appeals held as a matter of law that "one cannot

reasonably believe that he or she is entitled to use a vehicle when the person knows that

he or she is unable to legally operate the vehicle." *Plumb,* 766 N.W.2d at 886-87.

Because Plumb knew that she could not legally operate the Jeep in which she sustained

her injuries, the court held that she was precluded under § 3113(a) from receiving

personal protection insurance benefits.  766 N.W.2d at 887; *see also Young,* 2010 WL

3021860, at *5 (following *Plumb* in holding that the injured claimant in that case could

not have reasonably believed he was entitled to use the vehicle he was driving when he

sustained his injuries, where he lacked "a valid driver's license and he knew it was

unlawful for him to operate the [vehicle] without a license").

    Once again, the facts here are similar to those presented in *Plumb.*  At the time Mr.

Joye was test riding Mr. Warns's motorcycle, his license had been suspended for several

years, and Michigan law expressly mandates a driver's license — along with a

motorcycle indorsement, which Mr. Joye also lacked — in order to operate a motorcycle

on a public road.  *See* Mich. Comp. Laws § 257.301(1) ("[A] person shall not drive a

motor vehicle upon a highway in this state unless that person has a valid operator's or

chauffeur's license with the appropriate . . . indorsements for the type or class of vehicle

being driven . . . ."); Mich. Comp. Laws § 257.312a(1) ("A person, before operating a

motorcycle upon a public street or highway in this state, shall procure a motorcycle

15

indorsement on the operator's or chauffeur's license.").[6]  In addition, Mr. Joye testified that the motorcycle had no license plate, but Michigan law requires that a vehicle be properly registered "when driven or moved on a street or highway."  Mich. Comp. Laws § 257.216.  Thus, as Mr. Joye acknowledged at his deposition, (*see* Joye 8/27/2010 Dep. at 35-36), his operation of Mr. Warns's motorcycle on a public road was not lawful.

Under *Plumb,* then, it follows as a matter of law that Mr. Joye could not have reasonably believed he was entitled to use Mr. Warns's motorcycle at the time of his accident.[7]  Because Mr. Joye unlawfully took the motorcycle within the meaning of § 3113(a), and because this statute's safe harbor provision cannot be satisfied, the statutory

---

[6]Although Plaintiff asserts in its motion that "[a] motorcycle [i]ndorsement is not required in Michigan to operate a dirt bike," (Plaintiff's Motion, Br. in Support at 8), it cites no authority for this proposition.  In fact, the above-quoted statute expressly provides to the contrary if a dirt bike — which readily satisfies the statutory definition of a "motorcycle," *see* Mich. Comp. Laws § 257.31 — is being operated on a "public street or highway."  Mich. Comp. Laws § 257.312a(1).

[7]As noted by Defendant, Plaintiff scarcely addresses the "use" prong of § 3113(a)'s safe harbor provision in its motion or its response to Defendant's motion.  To the limited extent that Plaintiff touches upon this issue, it apparently relies principally on the statement in *Butterworth Hospital, supra,* 570 N.W.2d at 307, that "it is the unlawful nature of the taking, not the unlawful nature of the use, that is the basis of the exclusion under § 3113(a)."  Yet, because the court in that case found that the injured claimant had not "unlawfully taken" the vehicle he was driving when he sustained his injuries, the court had no occasion to address § 3113(a)'s safe harbor provision.  As the Michigan courts have repeatedly recognized, absent an unlawful taking, "the inquiry ends because § 3113(a) does not apply."  *Plumb,* 766 N.W.2d at 883; *see also Spectrum Health Hospitals v. Farm Bureau Mutual Insurance Co.,* No. 296976, 2011 WL 683040, at *1-*3 (Mich. Ct. App. Feb. 24, 2011) (dismissing as irrelevant the defendant insurer's argument that the claimant "was intoxicated and had no valid license at the time of the accident," because these facts bore only on the applicability of the safe harbor provision and the court had already concluded that there was no unlawful taking).  Here, in contrast, the facts establish that Mr. Joye unlawfully took Mr. Warns's motorcycle, and he therefore must avail himself of the safe harbor provision if he is to avoid § 3113(a)'s exclusion of coverage.  As explained, the Court finds as a matter of law that this safe harbor is unavailable here.

16

exclusion of coverage is triggered, and Defendant is entitled to summary judgment in its favor on Plaintiff's claim for reimbursement of the no-fault benefits it has paid to or on behalf of Mr. Joye.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's September 30, 2010 motion for summary judgment (docket #36) is DENIED.  IT IS FURTHER ORDERED that Defendant's September 21, 2010 motion for summary judgment (docket #35) is GRANTED.


                                s/Gerald E. Rosen_____
                                Chief Judge, United States District Court

Dated:  July 7, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 7, 2011, by electronic and/or ordinary mail.

                                s/Ruth A. Gunther_____
                                Case Manager